IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
PROGRESSIVE MOUNTAIN INSURANCE    *
COMPANY,                          *
                                  *
         Plaintiff,               *
                                  *       CV 113-213
     v.                           *
                                  *
COREY DRU ANDERSON, SOUTHERN      *
TRUST INSURANCE COMPANY and       *
ADAM DUANE CASON,                 *
                                  *
         Defendants.              *
```

O R D E R

Progressive Mountain Insurance Company ("Progressive") filed the instant lawsuit seeking a declaration from this Court regarding coverage owed to Defendant Corey Dru Anderson ("Anderson"). Now before the Court is Progressive's Motion for Summary Judgment (doc. 31). For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED**.

I.  **BACKGROUND**

A.  **The Underlying Accident and Relevant Insurance Policies**

This declaratory judgment action arises from a dispute over insurance coverage following a motor vehicle accident, the facts of which are largely undisputed. On June 29, 2011, Anderson was driving a 1996 Dodge Ram truck owned by his future father-in-law, Paul Hunley ("Mr. Hunley"). (Compl. ¶ 10; Anderson Dep. Doc. 31, Ex. G at 17-19.) On the day of the accident, Anderson was driving

Mr. Hunley's wife — at Mr. Hunley's request — to a doctor's appointment. (Anderson Dep. at 29.) Following the appointment, with Anderson's fiancée and future mother-in-law in tow, Anderson rear-ended Adam Duane Cason ("Cason"), who was driving a 2002 Freightliner on Georgia Highway 232. (Id. at 23-24; Compl. ¶¶ 11-12.) Cason alleges that he sustained a severe concussion and head injuries and was unable to return to work for several months. (Compl. ¶ 13.)

At all times relevant to the accident, Anderson did not own a vehicle. (Anderson Dep. at 18.) Mr. Hunley, however, owned four vehicles: two Dodge Ram trucks, one Chevrolet truck, and a motorcycle. (Id. at 15-18.) Mr. Hunley paid for the insurance covering the two Dodge trucks, including the 1996 Dodge Ram involved in the accident, under policies issued by Everest Security Insurance Company ("Everest"). (Id. at 30; Doc. 38 Ex. B.) A Progressive policy was issued for the Chevrolet truck. (Anderson Dep. at 30.) And although he was the named driver on the policy, Anderson would make his insurance payments to Mr. Hunley.[1] (Doc.

---

[1] The Progressive policy that covered Anderson as the driver provided coverage for any "insured auto." (Compl., Ex. B.) An insured auto as defined by the policy refers to the automobile specifically listed in the declarations page, here, the 1986 Chevrolet C10. (Id.) It is undisputed that the only vehicle covered on the Progressive policy was the Chevrolet, and Progressive did not specifically charge Anderson any premiums for a 1996 Dodge Ram. (See Doc. 41 ¶¶ 15, 18; Doc. 37 ¶ 15; Compl., Ex. B.) Even so, automobiles not owned by Anderson are covered under the policy when used by him, except for those vehicles "furnished or available for [the insured's] regular use." (Compl., Ex. B.)

The Progressive policy also required the insured to report any accident "as soon as practicable[.]" (Compl., Ex. B.) This provision applied regardless of fault in the accident and additionally required the insured to "promptly send [Progressive] any and all legal papers relating to any claim or lawsuit." (Id.)

38, Ex. B; Anderson Dep. at 30-31.) Mr. Hunley purchased all insurance policies through the Nelson Insurance Agency ("Nelson") in Thomson, Georgia. (Anderson Dep. at 30, 33.)

Because he did not own a car, when Anderson needed to use a vehicle either Mr. Hunley would drive him or Anderson would use one of Mr. Hunley's vehicles.[2] (Id. at 18.) Which vehicle Anderson would use depended on whether Anderson was driving the vehicle for business[3] or personal matters. According to Anderson, when he needed to use a truck for work he would ordinarily drive a small, utility-bed truck and not the 1996 Dodge Ram. (Id. at 14-15.) For personal matters, however, Anderson stated that he "usually" drove the newer truck — the 1996 Dodge Ram. (Id. at 18.) Even so, Anderson testified that he did not use the 1996 Dodge Ram "on a regular basis" and "[t]ypically [Mr. Hunley] would be the one driving." (Id. at 29.)

B. **Procedural Background**

Cason filed suit against Anderson in the Superior Court of McDuffie County on April 12, 2012 but dismissed that action just days before trial and re-filed in this Court on September 26, 2014.[4]

---

[2] Anderson is currently in default, and it appears that Mr. Hunley has not been deposed in this matter. Thus, there is limited evidence regarding Anderson's use of Mr. Hunley's vehicles.

[3] Mr. Hunley and Anderson started a business together known as P & C Enterprises, which provided contracting services to The Home Depot, among others. (Anderson Dep. at 11-13.)

[4] Following the accident, Cason made claims against Everest, which insured the 1996 Dodge Ram, and Southern Trust Insurance Company ("Southern Trust"), Cason's uninsured motorist carrier. (Doc. 36 at 4.) Everest tendered the policy limits prior to suit being filed in exchange for a limited liability release. (Doc. 38, Ex. D.)

3

Cason, et al. v. Anderson, 1:14-cv-186, Doc. 1 (S.D. Ga.). With his lawsuit, Cason alleges that Anderson (1) negligently rear-ended his vehicle; (2) drove too fast for conditions; (3) failed to look where he was going; and (4) followed too closely. Id. Cason and his wife seek past and future general damages and loss of consortium, as well as exemplary damages. Id.

Southern Trust, Cason's uninsured motorist carrier, hired attorney George R. Hall to represent Anderson in the McDuffie County case. (See Doc. 38, Ex. E; Doc. 38, Ex. F.) Throughout the underlying litigation, Mr. Hall engaged in discovery, obtained records, and represented Anderson in his deposition. (Doc. 38, Ex. E; Anderson Dep. at 2.) On July 20, 2012, Mr. Hall notified Nelson, the insurance agency, that Progressive might owe coverage for the accident, and Nelson forwarded this information to Progressive. (Doc. 38, Ex. F.) Following Mr. Hall's message, Progressive attempted to notify Anderson that it would provide him a defense pursuant to a reservation of rights agreement, though the notices were sent to the wrong addresses.[5] (Doc. 38, Ex. G.)

Thereafter, Progressive hired Percy J. Blount, Esq., to represent Anderson. (Doc. 38, Ex. I (Mr. Blount's entry of appearance).) Mr. Blount, along with Mr. Hall, continued to defend Anderson through discovery. (See Doc. 38, Exs. L-M.) On December

---

[5] The address listed for Anderson on his declarations page and the accident report was 1348C White Oak Road, Thomson, Georgia 30824. (Compl., Ex. B; Doc. 38, Ex. H.) According to Anderson's deposition, in 2014 he moved to 195 Whism Road, Apt. 6, also in Thomson, Georgia. (Anderson Dep. at 19-21.) The reservation of rights notices, however, were sent to 1348 C Whittle Oak Road, Thomson, Georgia 30824 and 195 Wishan Road, Apt. 6, Thomson, Georgia. (Doc. 38, Ex. G.) Both notices were returned as undeliverable. (Id.)

4

4, 2013, Mr. Blount supplemented Anderson's interrogatory responses in the McDuffie County case, adding that the case was being defended under a reservation of rights. (Doc. 38, Ex. N.) That response, however, did not include a copy of the reservation of rights letter, but rather stated that the letter would be produced at a later date. (Id.)

On November 26, 2013, Progressive filed a complaint in this Court seeking declaration that it was not obligated to provide coverage, indemnification, or a defense (1) because of Anderson's failure to provide timely notice of both the accident and lawsuit and (2) because the car involved in the accident was not an "insured auto" or "non-owned auto" under the policy. (Doc. 1.) Two Defendants, Southern Trust and Cason, answered Progressive's complaint, and Cason additionally asserted a counterclaim for coverage. (Docs. 5, 26.) Anderson was served on April 14, 2014. (See Doc. 13.) Anderson has since failed to plead or otherwise respond to the complaint. (Doc. 18.) Subsequently, Progressive filed its Motion for Default Judgment on May 20, 2014, asserting that, pursuant to Federal Rule of Civil Procedure 55(b), the Court should enter a default judgment against Anderson. (Doc. 19.) To avoid the potential for inconsistent judgments, the Court denied the motion for default judgment without prejudice pending resolution of the claims on the merits. (Doc. 44.) Now before the Court is Progressive's Motion for Summary Judgment.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

> [F]or issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Id. (quoting Four Parcels, 941 F.2d at 1437-38). In response, the

6

non-movant

> must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact. Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial-that is, such that no reasonable jury could find for the non-movant - should the movant be permitted to prevail without a full trial on the issues.

Fitzpatrick, 2 F.3d at 1116.

When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608. Then, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand

7

a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Defendants notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 34.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Progressive filed the instant declaratory judgment action pursuant to 28 U.S.C. § 2201, seeking a declaration of what, if any, coverage obligation it owes under the policy issued by it to Anderson. Progressive contends that it does not owe coverage

8

because (1) the 1996 Dodge Ram did not qualify as an "insured auto" or "non-covered auto" and (2) Anderson failed to provide Progressive with timely notice of both the accident and subsequent lawsuit.

**A. Reservation of Rights**

Before addressing the merits of Progressive's contentions, the Court must first determine if Progressive waived its coverage defenses by failing to notify Anderson of its reservation of rights. As detailed above, after the initial lawsuit was filed in McDuffie County, Southern Trust hired Mr. Hall to represent Anderson. In the summer of 2012, Mr. Hall notified Nelson that Progressive might owe coverage for the accident, and Nelson forwarded that message to Progressive. Progressive then sent a reservation of rights notice to two different addresses for Anderson, both of which were returned as undeliverable. Progressive then hired Mr. Blount to represent Anderson,[6] and Mr. Blount, along with Mr. Hall, defended Anderson throughout discovery.[7] Defendants contend that Progressive is now estopped from relying on coverage defenses because it failed to properly notify Anderson of its reservation of rights.

Anderson — by nature of his default — has failed to raise any argument regarding the sufficiency of notice and the reservation of rights letter. Instead, Southern Trust and Cason, as the only

---

[6] Mr. Blount's entry of appearance in the McDuffie County case was on August 22, 2012. (Doc. 38, Ex. I.)

[7] Specifically, Mr. Blount participated in at least two depositions. (Doc. 38, Exs. L, M.)

9

responsive Defendants, raise this argument. These parties are admittedly not parties to the insurance contract at issue and are not in privity with Progressive. Thus, the Court addresses whether Southern Trust and Cason have standing to challenge the notice of the reservation of rights letter.

In a case cited favorably by the Eleventh Circuit Court of Appeals,[8] the Georgia Court of Appeals held that the "right to deny coverage flows only to [an] insured and [an injured party] may not complain about [the insurer's] failure to provide a timely reservation of rights notice." Capitol Indem. Corp. v. Fraley, 597 S.E.2d 601, 603 (Ga. Ct. App. 2004). There, an insurer brought a declaratory judgment action seeking judicial determination of the coverage owed under a liability policy following a physical altercation at a bar. Id. at 602. The insurer submitted a reservation of rights notice approximately two and a half months after learning of the claims. Id. The injured party argued that the insurer was estopped from asserting coverage defenses because of an untimely reservation of rights. Id. As here, only the injured party, and not the insured, raised argument in the declaratory judgment action as to the adequacy of the reservation of rights. Id.

In addressing the injured party's standing to challenge the reservation of rights, the court explained that "an injured party has no standing to file a direct suit against the insurer of the

---

[8] Tiller v. State Farm Mut. Auto. Ins. Co., 549 F. App'x 849, 854 (11th Cir. 2013) (quoting Fraley for the proposition that "[i]n the absence of a judgment against the defendants, [the injured third party] has no rights under the [insurance] policy and thus could not sue the insurer directly").

10

party alleged to have caused the injury absent an unsatisfied judgment against the insured." Id. at 602-03. Based on that general rule, the court similarly found that the injured party would lack standing to assert waiver or estoppel based on a failure to provide notice of reservation of rights. Id. In so holding, the court analogized the facts to those of a 1998 Georgia Supreme Court decision. Id. at 603. In that case, Nat'l Union Fire Ins. Co. v. Am. Motorists Ins. Co., 504 S.E.2d 673, 674 (Ga. 1998), an excess insurance carrier undertook the insured's defense of two lawsuits after the primary insurer tendered the policy limits. Thereafter, the excess insurance carrier sued the primary, asserting that one of the primary carrier's policies provided for additional coverage. Id. The primary insurer countered that National Union had failed to reserve its rights to deny coverage, and thus was estopped from raising those claims. Id. The Georgia Supreme Court disagreed, holding that

> [a] "reservation of rights" typically refers to an insurer's notice to its insured that it will provide a defense, but may litigate and ultimately deny coverage if the insured is found liable. In this case, [the excess carrier's] contract was with [the insured]. Thus, [the excess carrier's] "right to deny coverage" flows only to [the insured]. Any reservation of that right would have to be directed to [the insured] and [the primary insurer] may not complain about [the excess carrier's] failure to provide such notice.

Id. at 674-75. Moreover, the Fraley court expressly held that its "conclusion is not altered, [as the injured party contended], by the fact that [the insurer] named him as a defendant in the

11

declaratory judgment action." Fraley, 597 S.E.2d at 603. Applying this logic to the case at bar, this Court does

> not believe that "[Progressive] waived its right to the protection afforded it under Georgia case law and the policy by instituting a declaratory judgment action against both the insured and the injured third party. Had [Progressive] not joined [Cason and Southern Trust] as co-defendants in the instant action, any judgment obtained would not have been binding on them and would have subjected [Progressive] to the possibility of further litigation on the same issue."

See id. (quoting Colonial Penn. Ins. Co. v. Hart, 291 S.E.2d 410, 415 (Ga. Ct. App. 1982)).

Based on the foregoing, the Court finds that neither Cason nor Southern Trust have the requisite standing to challenge the adequacy of Progressive's notice to Anderson of its reservation of rights.

**B. Anderson Failed to Provide Notice of the Accident to Progressive**

Proceeding to the merits of Progressive's claims, the Court first addresses whether Anderson complied with the policy's requirement to provide notice of the accident. Under Georgia law,

> [i]nsurance is a matter of contract and the parties are bound by the terms of the policy. It is also the general rule that the insured is chargeable with knowledge of all the conditions imposed upon him by the terms of his policy. The purpose of the notice provision in an insurance policy is to enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim.

Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 249-50 (Ga. Ct. App. 1976) (internal citations omitted). Moreover, an

insurer need not show it was prejudiced by the failure to receive notice "as the notice requirement [is] a condition precedent under the policy." Bates v. Holyoke Mut. Ins. Co. in Salem, 318 S.E.2d 777, 778 (Ga. Ct. App. 1998).[9]

Progressive claims that, contrary to the policy's requirements, it did not receive notice of the accident until some thirteen months later, and for that reason it is not obligated to provide coverage or a defense. Progressive asserts that the failure to provide notice thirteen months after the accident is unreasonable under Georgia law. It further asserts that any notice provided to Nelson is insufficient under the policy. In that regard, Progressive argues that Nelson acted as an independent insurance broker and was not its agent and that Nelson did not have apparent authority to bind Progressive. Progressive also asserts that the policy required notice as a condition precedent to coverage. Defendants counter that Mr. Hunley provided notice to Nelson and that notice should be imputed to Progressive. Defendants do not, however, contest that Anderson failed to provide any notice himself or that notice under this policy is a condition precedent to coverage.

---

[9] The Georgia Court of Appeals has held notice requirements such as that contained in the Progressive policy are conditions precedent to coverage. See, e.g., Bates, 318 S.E.2d at 778 (holding that a policy requiring the insured to give the insurer notice of an accident "as soon as practicable" is a condition precedent to coverage); Richmond, 231 S.E.2d at 250 (holding that requiring notice "as soon as practicable" is to be treated as a valid condition precedent); Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 209 S.E.2d 6, 9 (Ga. Ct. App. 1974) (same); Wolverine Ins. Co. v. Sorrough, 177 S.E.2d 819, 823 (Ga. Ct. App. 1970). The Progressive policy, under the "YOUR DUTIES IN THE EVENT OF AN ACCIDENT, CLAIM, LOSS OR SUIT" section, required the insured to report any accident "as soon as practicable" by calling a toll-free number. (Compl., Ex. B.) This condition applied regardless of fault. (Id.)

13

Ordinarily, "[i]ndependent insurance agents or brokers are [] considered the agent of the insured, not the insurer" such that notice to an independent agent will not constitute notice to the insurer. Se. Exp. Sys., Inc. v. S. Guar. Ins. Co. of Ga., 482 S.E.2d 433, 435 (Ga. Ct. App. 1997). "It is true that an insurance company could place a purported agent in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim."[10] Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 607 (Ga. Ct. App. 2007). "However, in order for apparent agency authority to apply, the claimant must also show justifiable reliance on the representation of agency." Alea London Ltd. v. Cook, No. 4:06-cv-0238, 2007 WL 5376619, at *11 (N.D. Ga. Sept. 19, 2007) (quoting Kay-Lex Co., 649 S.E.2d at 602).

Even assuming Nelson did more than merely procure the policies, the requirement of a claimant's justifiable reliance proves fatal to Defendants' argument. In Alea London, the court held the defendants failed to show that the insured justifiably relied on any representation of agency because there was no evidence that (1) the insured relied on the policy to conclude the broker was an agent of the insurer or (2) the insured looked

---

[10] For instance, "[w]hen the terms of the policy or instructions stamped upon the face of a liability policy instruct the insured that it is to provide notice of suit, either to the independent insurance agent *or* the insurer, such delegation of apparent authority, notwithstanding the independent contractor relationship, will estop the insurer to deny any notice which was given to the independent agent under its instructions." Se. Exp. Sys., Inc., 482 S.E.2d at 435 (emphasis added). Or "when an insurance agency collects premium payments from the insured and submits notices of claims to the insurer, the insurance agency could be considered a dual agent for the insured and for the insurer." Yeomans & Assocs., Inc. v. Bowen Tree Surgeons, Inc., 618 S.E.2d 673, 680 (Ga. Ct. App. 2005).

14

through the policy, saw the broker's name, and determined that the broker was the proper contact. Alea London, 2007 WL 5376619, at *13. In fact, the insured in Alea London never even read the policy, but blindly assumed that the broker was his insurer. Id.

Here, the undisputed facts before the Court show that Anderson at no time made any attempt to notify either Progressive or Nelson about the accident. Instead, Anderson believed Mr. Hunley told Nelson of the accident, but even that he could not say with any degree of certainty. (Anderson Dep. at 32-33.) Moreover, Anderson did not know any details regarding his policy. (See id.) In fact, Anderson never made payments to either Nelson or Progressive, but would pay the insurance premiums to Mr. Hunley. (Id. at 31.)

Defendants' only "evidence" of Anderson's justifiable reliance is that Nelson "handled the insurance for Mr. Hunley's vehicles," from which they conclude that "Anderson and Hunley were justified in assuming that notice of the accident to Nelson constituted notice to their insurers." (Doc. 36 at 13.) On the contrary, "there is no evidence that [Anderson] relied on the endorsements of [the] policy to conclude that the [Nelson Insurance Agency] was the agent of [Progressive]. There is no evidence that he looked through the policies, saw the name of his own agent [], concluded that his own agent must be an agent of the insurer[], and therefore gave [Nelson] a call." See Kay-Lex Co., 649 S.E.2d at 607-08. For that reason, the Court finds that Anderson did not justifiably rely on any representation of agency by Nelson, and any notice given to

15

Nelson therefore cannot be imputed to Progressive under the doctrine of apparent authority.

Because Anderson is not entitled to coverage or a defense under the contract for want of proper notice of the accident, the Court declines to address the remaining contentions raised in the briefs, particularly the status of the 1996 Dodge Ram as an insured auto and the notice of lawsuit.

### III. CONCLUSION

Based on the foregoing, Progressive's Motion for Summary Judgment is hereby **GRANTED** (doc. 31). The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of January, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA